HOLLAND & HART LLP
BENJAMIN N. SIMLER (SBN 273778)
bnsimler@hollandhart.com
555 17th Street, Suite 3200
Denver, CO 80202-3921
Telephone: 303.295.8000
Facsimile: 303.295.8261

*Attorneys for Plaintiffs Chipotle Mexican Grill, Inc. and CMG Pepper, LLC*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| Chipotle Mexican Grill, Inc. and CMG Pepper, LLC,<br><br>　　　　　　　Plaintiffs,<br><br>　v.<br><br>Atlantic Natural Foods, LLC,<br><br>　　　　　　　Defendant. | Case No. 8:20-cv-01568<br><br>**COMPLAINT FOR:**<br>**(1) TRADEMARK INFRINGEMENT;**<br>**(2) FALSE DESIGNATION OF ORIGIN;**<br>**(3) TRADEMARK DILUTION; AND**<br>**(4) UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Chipotle Mexican Grill, Inc. and CMG Pepper, LLC (collectively, "Chipotle"), by and through their attorneys Holland & Hart LLP, complain against Defendant Atlantic Natural Foods, LLC ("Atlantic") as follows:

**INTRODUCTION**

This is an action for trademark infringement, false designation of origin, trademark dilution, unfair competition, and related claims all arising out of Atlantic's unauthorized use of Chipotle's incontestable, famous, registered CHIPOTLE® marks to sell competing and/or related products and services. Chipotle seeks injunctive relief, damages, disgorgement of profits, attorneys' fees,

and other relief for under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and California state law.

## PARTIES

1. Plaintiff Chipotle Mexican Grill, Inc. is a Delaware corporation with its principal place of business in Newport Beach, California.

2. Plaintiff CMG Pepper, LLC is a Colorado limited liability corporation with its principal place of business in Newport Beach, California. CMG Pepper, LLC is wholly owned by Chipotle Mexican Grill, Inc., and owns the trademark rights at issue in this action. Chipotle Mexican Grill, Inc. and CMG Pepper, LLC will be collectively referred to herein as "Chipotle."

3. Defendant Atlantic is a Delaware limited liability company having its principal place of business in Nashville, North Carolina.

## JURISDICTION AND VENUE

4. This action arises under the Lanham Act, 15 U.S.C. § 1051 et seq., and supplemental state law. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338; and supplemental jurisdiction over Chipotle's state law claims pursuant to 28 U.S.C. § 1367.

5. On information and belief, this Court has personal jurisdiction over Atlantic because Atlantic has committed tortious acts of infringement and dilution within California, transacts business within California related to this action, and this action arises, in part, from Atlantic's infringing conduct within California.

6. In particular, Atlantic has marketed and sold unauthorized products using and bearing Chipotle's famous trademarks in California and to California residents, including through retail outlets such as Costco, Walmart, Target, Gelson's, Sprouts, and other stores, as well as through online sales such as via Amazon.

7. Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part the events giving rise to the claims occurred

within the Central District of the State of California and/or because Atlantic is subject to personal jurisdiction in this district with respect to this civil action.

8. Indeed, despite having actual knowledge that its conduct infringes and dilutes Chipotle's marks and of the harm its intentional acts have caused and continue to cause Chipotle including in California, Atlantic nevertheless continues to market, offer to sell, and its unauthorized offending products to residents of this district.

9. For example, below is a screenshot from the Sprouts website, which confirms that to this day Atlantic continues to direct its tortious conduct into Orange County, California, knowing its actions will cause harm to Chipotle and its marks and to consumers here:



## GENERAL ALLEGATIONS

**Chipotle's Launch and Use of its Famous CHIPOTLE® Trademark**

10. In 1993, Steve Ells, a classically trained chef and graduate of the Culinary Institute of America, founded Plaintiff Chipotle and started using

CHIPOTLE® as a mark in connection with his first restaurant at the corner of Evans and Gilpin Streets in Denver, Colorado. Since the opening of the first restaurant, Chipotle experienced rapid success, widespread customer acceptance, and national recognition of Chipotle's food services and products, all marketed and sold in connection with the CHIPOTLE® Marks.

11.  Since its inception, Chipotle has been providing responsibly sourced, classically-cooked, real food with wholesome ingredients. Chipotle currently has over 2,600 CHIPOTLE® restaurants in the United States, Canada, and abroad and employs over 90,000 individuals. It is publicly traded on the New York Stock Exchange under the symbol "CMG."

12.  Chipotle is committed to sourcing its ingredients in the most ethical and sustainable manner possible and has pioneered a movement in furtherance of food with integrity. Chipotle communicates this commitment to its customers, and Chipotle's customers associate the CHIPOTLE® Marks with this commitment to ethical food sourcing as well as with high quality and attention to detail.

13.  Chipotle has long been known for its Burrito Bowls and also recently began selling its Lifestyle Bowls.

14.  By proving high quality meals and restaurant services for such an extended length of time, Chipotle has built up significant goodwill and customer recognition in connection with its CHIPOTLE® Marks, which has become a household name.

15.  Chipotle is the owner of dozens of common law and registered trademarks covering its various menu items, restaurant services, trade dress, and other related goods and services.

16.  Chipotle has heavily advertised and promoted its brands for nearly three decades, having invested tens of millions of dollars and hundreds of thousands of hours of time and effort to develop its nationally famous brand and to

create, foster, and deepen the goodwill and household name status that its CHIPOTLE® brand commands.

17. As a result of Chipotle's extensive, long-standing and exclusive use of the CHIPOTLE® Marks, the CHIPOTLE® Marks have become famous in the eyes of food shoppers and the general public.

18. Plaintiff's CHIPOTLE® Marks have acquired substantial goodwill and are an extremely valuable commercial asset, serving to identify and distinguish Chipotle's restaurants and food items from others available in the market.

19. Chipotle's rights in and to the CHIPOTLE® Marks are embodied, in part, in its United States trademark registrations.

20. Among Chipotle's portfolio of incontestable trademark registrations is U.S. Trademark Registration No. 3,523,738, consisting of the standard character mark CHIPOTLE, for, *inter alia*, "prepared vegetable-based entrees; . . . cooked beans; [and] cheese," in international class 29, and "rice; salads comprised primarily of rice and choice of meat, beans, salsa, cheese and/or sour cream; prepared entrees consistent primarily of rice," in international class 30. A copy of said registration is attached hereto as Exhibit 1.

21. Also among Chipotle's portfolio of incontestable trademark registrations is U.S. Trademark Registration No. 2,344,423, consisting of the standard character mark CHIPOTLE, for restaurant services in international class 43. A copy of said registration is attached hereto as Exhibit 2.

22. Chipotle also has numerous additional incontestable registrations for its CHIPOTLE marks, for similar or related goods and services, a sampling of which are attached hereto as Exhibits 3-11.

23. All of Chipotle's registered and common law rights to CHIPOTLE® are referred to in this Complaint as the CHIPOTLE® Marks.

**Atlantic's Infringements**

24. Recently, Chipotle learned that Atlantic filed a United States trademark application for CHIPOTLE BOWL, Application No. 88/837,666 in connection with "vegetarian plant-based prepackaged meal" (the "Application").

25. As conceded by its Application that seeks a trademark registration, and as is apparent from its product packaging and marketing, Atlantic uses CHIPOTLE BOWL as a source identifier on its products as well as on its website, using CHIPOTLE BOWL prominently, as seen below.



Loma Linda Chipotle Bowl

Packed with savory plant-based protein, black beans, rice and veggies, enjoy the flavors of the Southwest in one easy dish. Just add your favorite toppings!

26. The goods offered by Atlantic are highly related if not competitive to those offered by Chipotle under its CHIPOTLE® Marks.

27. The addition of the descriptive term "BOWL" to "CHIPOTLE" is insufficient to alleviate the likelihood of confusion that is certain to arise. Indeed, in this instance it increases the likelihood of confusion due to the fact that Chipotle is well-known for offering bowls as a menu item.

28. Due to Atlantic's unauthorized use as a trademark of the famous CHIPOTLE mark, consumers are likely to believe that the goods offered by Atlantic are affiliated with, approved by, or sponsored by Chipotle, although they are not.

Error! Unknown document property name.

29. Atlantic's filing of a federal trademark application for CHIPOTLE BOWL establishes that it is using the term as source identifying trademark, which constitutes trademark infringement and unfair competition under the Lanham Act as well as under state law.

30. Not surprisingly in view of Chipotle's long-standing, incontestable, and preexisting rights, the USPTO duly reviewed Atlantic's Application and issued a refusal for the same, concluding that Atlantic's use of CHIPOTLE BOWL as a trademark was likely to cause consumer confusion.

31. Indeed, in rejecting Atlantic's Application, the USPTO cited to several of Chipotle's U.S. Trademark Registrations, including Reg. Nos. 3,523,738; 3,412,092; 3,618,869; and 3,622,272 for CHIPOTLE and Reg. No. 3,325,609 for CHIPOTLE MEXICAN GRILL.

32. Even before Atlantic's Application was rejected by the USPTO, on April 16, 2020, upon learning of Atlantic's conduct, Chipotle wrote to Atlantic to advise Atlantic of its concerns and to demand that Atlantic cease its infringing and dilutive conduct.

33. Upon receiving the USPTO's determination that Atlantic's use of CHIPOTLE BOWL was likely to cause confusion with Chipotle's long-standing trademark rights, Atlantic abandoned the Application.

34. However, despite abandoning its Application, and despite being on notice of the USPTO's determination that a likelihood of confusion exists, to date Atlantic continues to market and sell its infringing products, and has so far refused to cease from doing so.

35. Atlantic's use of the CHIPOTLE® Marks or variations thereof for its own products began long after the CHIPOTLE® Marks already had become widely recognized by the general consuming public of the United States as a designation of source of Chipotle's goods or services.

36. Atlantic's use of the CHIPOTLE® Marks or variations thereof for its own similar products impairs the distinctiveness of the CHIPOTLE® Marks by reducing the ability of the CHIPOTLE® Marks to serve as a source-identifying mark for Chipotle's goods and services, and as such is likely to cause dilution by blurring.

37. Atlantic's use of the CHIPOTLE® Marks or variations thereof for its own similar products also is causing dilution by tarnishment by harming the reputation of the CHIPOTLE® Marks. The offending Atlantic products are of an inferior quality to Chipotle's products and services offered under the CHIPOTLE® Marks for numerous reasons.

38. Among these reasons, by way of example and not limitation, are the numerous consumer complaints and negative reviews associated with Atlantic's offending goods. For example, on Amazon, 14% of consumer reviews rate Atlantic's offending Chipotle Bowl product as a 1-star item, with reviewers describing the product as "Awful."

39. Below are captures of one such review and of the customer ratings from the Amazon product page for Atlantic's Chipotle Bowl product:



**FIRST CLAIM FOR RELIEF**
**(TRADEMARK INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1114)**

40. Chipotle incorporates the preceding paragraphs as though set forth fully herein.

41. Chipotle owns valid federal registrations for the CHIPOTLE® Marks.

42. Plaintiff's incontestable registrations in the CHIPOTLE® Marks constitutes conclusive evidence of the validity of Chipotle's trademark rights and of Chipotle's exclusive right to use the CHIPOTLE® Marks in commerce.

43. Atlantic's deliberate and unauthorized use of the term CHIPOTLE as a trademark in connection with its marketing and sale of competing products and services constitutes willful trademark infringement in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114, because such use is likely to cause confusion or mistake as to the source, affiliation, connection, or association of Atlantic's products and Chipotle, or as to the origin, sponsorship, or approval of Atlantic's products; or to cause consumers to believe, incorrectly, that Atlantic is the senior use of the CHIPOTLE® Mark and that Chipotle is improperly using, copying, or infringing Atlantic's mark.

44. By reason of Atlantic's acts as alleged above, Chipotle has suffered and will continue to suffer irreparable harm to the value and goodwill of its CHIPOTLE® Mark, as well as irreparable harm to Chipotle's business, goodwill, and reputation. Unless enjoined, Atlantic's unlawful conduct will continue, further injuring Chipotle and confusing the public.

45. On information and belief, Atlantic has received substantial revenues and profits as a result of its unlawful conduct, to which Atlantic is not entitled, and Chipotle has also suffered damages as a result of such unlawful conduct, for which Atlantic is responsible.

46. Therefore, Chipotle demands judgment against Atlantic as set forth below.

**SECOND CLAIM FOR RELIEF**
**(COMMON LAW TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, AND UNFAIR COMPETITION IN VIOLATION OF 15 U.S.C. § 1125(A))**

47. Chipotle incorporates the preceding paragraphs as though set forth fully herein.

48. Chipotle's CHIPOTLE® Marks are distinctive among the relevant trade and public as identifying Chipotle's services and products.

49. Atlantic's deliberate and unauthorized use of CHIPOTLE in connection with its competing products and services constitutes trademark infringement, unfair competition, and false designation of origin in willful violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), because such use is likely to cause confusion or mistake, or to deceive consumers as to the affiliation, connection, association of Atlantic's CHIPOTLE products and services with Chipotle, or as to the origin, sponsorship, or approval of Atlantic's products and services by Chipotle; or to cause consumers to believe, incorrectly, that Atlantic is the senior use of the CHIPOTLE® Mark and that Chipotle is improperly using, copying, or infringing Atlantic's mark.

50. By reason of Atlantic's acts as alleged above, Chipotle has suffered and will continue to irreparable harm to the value and goodwill of Chipotle's CHIPOTLE® Mark, as well as irreparable harm to Chipotle's business, goodwill, and reputation. Unless enjoined, Atlantic's unlawful conduct will continue, further injuring Chipotle and confusing the public.

51. On information and belief, Atlantic has received substantial revenues and profits as a result of its unlawful conduct, to which Atlantic is not entitled, and Chipotle has also suffered damages as a result of such unlawful conduct, for which Atlantic is responsible.

52. Therefore, Chipotle demands judgment against Atlantic as set forth below.

### THIRD CLAIM FOR RELIEF
### (TRADEMARK DILUTION IN VIOLATION OF 15 U.S.C. §1125(C))

53. Chipotle incorporates the preceding paragraphs as though set forth fully herein.

Error! Unknown document property name.

54. Due to Chipotle's long-standing, extensive, widespread, and exclusive use of the CHIPOTLE® Marks, coupled with the millions of dollars invested in marketing and promoting the CHIPOTLE® Marks nationwide, Chipotle's CHIPOTLE® Marks have become famous.

55. The similarity between Chipotle's famous CHIPOTLE® Marks and Atlantic's use of CHIPOTLE in commerce creates a strong association between the two in the minds of consumers.

56. Atlantic's use of CHIPOTLE in connection with its prepared foods is causing and is likely to cause dilution of Chipotle's famous CHIPOTLE® Marks, in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

57. By reason of Atlantic's acts as alleged above, Chipotle has suffered and will continue to suffer monetary damages and irreparable harm to the value and goodwill of Plaintiff's CHIPOTLE® Marks, as well as irreparable harm to Chipotle's business, goodwill, and reputation. Plaintiff has no adequate remedy at law because damage to Plaintiff's goodwill and reputation are continuing and difficult to ascertain.

58. JITB's continued use of the CHIPOTLE mark is deliberate, willful, fraudulent, and constitutes a knowing dilution of Plaintiff's CHIPOTLE® Marks.

### FOURTH CLAIM FOR RELIEF
(Unfair Competition)

59. Chipotle incorporates the preceding paragraphs as though set forth fully herein.

60. Atlantic's acts of trademark infringement and false designation of origin, complained of herein constitute unfair competition with Chipotle under the common law and statutory laws of the State of California, particularly California Business & Professions Code § 17200, et seq.

61. Atlantic's conduct is unfair because it allows Atlantic to benefit unjustly by virtue of the goodwill and positive reputation associated with Chipotle

Error! Unknown document property name.

and its CHIPOTLE® Marks and goods and services. Atlantic has intentionally violated, and continues to violate, Chipotle's rights in the CHIPOTLE® Marks and related commercial benefits.

62. Atlantic is willfully and deliberately misleading the public by using in commerce reproductions, counterfeits, copies and/or colorable imitations of Chipotle's incontestable and federally registered CHIPOTLE® Mark. This conduct is likely to confuse the public as to whether Atlantic's goods and services are somehow related to, or approved or sponsored by, Chipotle or vice versa; or that Atlantic is the senior use of the CHIPOTLE® mark and that Chipotle is improperly using, copying, or infringing Atlantic's mark.

63. Chipotle and the public have been, and continue to be, irreparably damaged by violation of California common law and statutory law, and Chipotle has no adequate remedy at law. Unless enjoined, Atlantic's unlawful conduct will continue, further injuring Chipotle and confusing the public.

64. On information and belief, and as a direct, proximate, and foreseeable result of Atlantic's wrongful conduct, Atlantic has derived and received, and will continue to derive and receive, gains, profits and advantages from Atlantic's unfair competition in an amount that is not presently known to Chipotle. By reason of Atlantic's wrongful acts as alleged in this Complaint, Chipotle has been damaged and is entitled to monetary relief in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Chipotle requests that the Court enter judgment in its favor as follows:

A. Granting temporary, preliminary, and permanent injunctive relief enjoining Atlantic and each of its affiliates, subsidiaries, officers, directors, agents,

servants, and employees, and all others aiding, abetting, or acting in concert therewith, from:

    i.    using or seeking to register CHIPOTLE, CHIPOTLE BOWL or any other similar mark, in connection with the promotion, sale, or offer of sale of any food and beverages, restaurant services, prepared food items, or any substantially related goods or services;

    ii.    otherwise competing unfairly or committing any acts likely to confuse the public into believing that Atlantic or any of Atlantic's products are associated, affiliated or sponsored by Chipotle or are authorized by Chipotle, in whole or in part, in any way;

B.    Ordering that Atlantic account for and pay to Chipotle any and all profits Atlantic has received by its conduct alleged herein;

C.    Awarding to Chipotle any and all damages and losses suffered by Chipotle as a result of Atlantic's conduct as set forth herein, and trebled pursuant to 15 U.S.C. § 1117 and applicable state law;

D.    Awarding to Chipotle the costs of this action and its reasonable attorneys' fee and costs, pursuant to 15 U.S.C. § 1117 and applicable state law;

E.    Awarding to Chipotle pre-judgment and post-judgment interest on all moneys recovered by or awarded to it;

F.    Ordering Atlantic to file with the Court and serve on Chipotle's counsel a report setting forth the manner and form of their compliance with the Court's orders;

G.    Granting such other and further relief as the Court deems just, equitable, and appropriate.

## JURY DEMAND

Plaintiff Chipotle demands a trial by jury of all issues so triable.

Error! Unknown document property name.

| | |
|---|---|
| Dated: August 21, 2020 | HOLLAND & HART LLP |
| | By: /s/Benjamin N. Simler |
| | Benjamin N. Simler(SBN 273778) |
| | 555 17th Street, Suite 3200 |
| | Denver, Colorado 80202 |
| | Phone: (303) 295-8000 |
| | Fax: 303-295-8261 |
| | bnsimler@hollandhart.com |
| | |
| | *Attorneys for Plaintiffs Chipotle Mexican Grill, Inc. and CMG Pepper, LLC* |

15249013